**CLALIT HEALTH SERVICES,**
Plaintiff,

v.

**ISRAEL HUMANITARIAN
FOUNDATION,**
Defendant.

**No. 02 CIV. 6552(DC).**

United States District Court,
S.D. New York.

Sept. 14, 2005.

Stephen L. Weinstein, Eiseman, Levin, Lehrhaupt & Kakogiannis, P.C., New York City, for Plaintiff.

Monica Ruth Jacobson, Alvy & Jacobson, New York City, for Defendant.

## ORDER

CHIN, District Judge.

By letter dated September 7, 2005 (the "9/7/05 Letter"), defendant Israel Humanitarian Foundation ("IHF") has asked for permission to move for reconsideration or reargument of the Court's August 31, 2005, opinion (the "Opinion") that granted in part and denied in part the parties' cross-motions for summary judgment. Plaintiff Clalit Health Services ("Clalit") responded by letter dated September 8, 2005, and IHF wrote yet another letter, dated September 12, 2005. IHF's letters are treated as a motion for reconsideration or reargument. The motion is granted in part and denied in part.

■ IHF points out that the Court incorrectly stated in the Opinion that "[t]he parties here do not dispute that the MOU is an enforceable contract." (Opinion at 11). In fact, IHF did include an argument in a footnote that the validity of the MOU was not conceded due to an alleged breach of the covenant of good faith and fair dealing by Clalit. (*See* Def.'s Mem. of Law at 11 n. 6). Specifically, IHF argued that the validity of the MOU was in question because Clalit breached the covenant "by funding a competing fund raising entity [the IAF] headed by disaffected former directors of IHF who drew on their past contacts and expertise with IHF donors to convince them to make donations to Clalit through the IAF, rather than IHF." (Def.'s Mem. of Law at 12). IHF seeks to move for reconsideration "to amend and correct the error of fact." (9/7/05 Letter at 2).

■ "The standard for granting … a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Notwithstanding the Court's overlooking of the statement in footnote 6, IHF points to no fact or controlling law that would alter the conclusions reached by the Court.

First, IHF's argument that Clalit's alleged breach renders the contract unenforceable is not legally cognizable, because the protections of the covenant of good faith and fair dealing "cannot exist in the absence of an underlying valid contract." *ARI & Co. v. Regent Int'l Corp.,* 273 F.Supp.2d 518, 522 (S.D.N.Y.2003) (citations omitted). In other words, IHF's argument that Clalit breached the covenant necessarily assumes the existence of a valid contract. Second, IHF never challenged the creation of an enforceable contract in the MOU. IHF acknowledges that "[o]n September 9, 1996 IHF and Clalit entered into [the MOU]. The MOU was negotiated by Yitzhak Kaufman, on behalf of Clalit and Stanley Abrams, on behalf of IHF." (Def.'s Mem. of Law at 5). Third, to the extent that IHF argues that the MOU was valid but it was not obligated to turn over the Berlin funds because of Clalit's alleged breach, it has pointed to no fact from which a reasonable jury could find such a breach. IHF's argument is that Clalit breached the covenant by funding a competing fundraising organization (the IAF) that was staffed by some former IHF employees who solicited donations from former IHF donors. But by its own terms, the MOU was a non-exclusive agreement. (*See* MOU at 1 ("[I]t is agreed that such fundraising shall not be exclusive on either side, each party being able to represent or be represented by others respectively[.]")). IHF cannot complain that Clalit funded a competing fundraiser when the agreement it signed by its terms specifically allowed for that very arrangement. *See* 23 Richard A. Lord, Williston on Contracts § 63:22 (4th

ed. 2004) ("[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged[.]"). Moreover, IHF does not dispute that it was in fact aware of the existence of such competing fundraisers. (*See* Dep. of Stanley Abrams (former executive director of IHF) at 87:19–21 ("I was aware that [Clalit] had other entities in the United States that was [sic] raising money for it.")).

Accordingly, the motion for reconsideration is denied, except that the statement in the Opinion to the effect that the parties do not dispute that the MOU is an enforceable contract is deleted. In fact, IHF challenges the validity of the MOU based on its assertion that Clalit's alleged breach of the implied covenant of good faith and fair dealing rendered the MOU unenforceable. As noted above, on the record before the Court, that assertion is rejected as a matter of law.

Finally, the Court notes that in its September 8, 2005, letter, Clalit represents that at the next pretrial conference it intends to make an application to withdraw the two remaining declaratory judgment claims and for entry of a final judgment in the amount of $1,075,905.10, plus interest. The request to withdraw the claims is granted, and the conference, which had been scheduled for September 21, 2005, is canceled. Clalit shall submit a proposed final judgment, on notice, in the amount of $968,318.19, plus interest, which represents 37.5% of the funds that IHF received from the Berlin Will (to which Clalit was entitled under the MOU), minus the 10% administrative fee to which IHF is entitled under paragraph 7.D. of the MOU.

SO ORDERED.